James Lloyd SHORT, a/k/a Jack Lloyd Short, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–617–CR.

Court of Appeals of Texas, Corpus Christi.

April 15, 1993.

J.C. Carroll, Houston, for appellant.

Robert E. Bell, Edna, for appellee.

Before NYE, C.J., and SEERDEN and GILBERTO HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

A jury found appellant, James Lloyd Short, guilty of the offense of aggravated manufacture of a controlled substance, to-wit: methamphetamine, in an amount of 400 grams or more by aggregate weight, including any adulterants or dilutants. The trial court assessed punishment at twenty-five years in prison, plus a $10,000 fine. Appellant appeals by four points of error. The State did not file a brief in this case. We reverse.

The State's evidence showed that in early February 1988, Officer Jung spoke with I.T. Taylor. As a result of that conversation, Jung concluded that a methamphetamine lab (meth lab) was operating at a rural residence in Jackson County and that appellant and Randy Gailey were the persons at that residence. Jung testified that the utilities to the residence were activated on November 13, 1987, and that Jack Short signed the utilities-service contract. He also testified that appellant's driver's license number was on the contract for identification.

On February 18, 1988, Jung received information that an acid-like odor was coming from the residence. That day, he went to the residence and smelled an acid-like odor which he knew was unique to a meth lab. In March 1988, Jung received information that an ether-like odor was coming from the residence. He testified that this odor was consistent with a meth lab. In April 1988, Jung and Detective Smejkal began surveillance on the residence. On one occasion, they saw appellant and Gailey loading boxes, cylindrical containers, jugs, and water coolers into Gailey's pick-up. Most of these items were being removed from a shed behind the house. After the items were loaded, appellant locked the shed and tested a siren-signaling device on it. Minutes later, appellant and Randy and Carolyn Gailey came out of the house and left in the pick-up. Jung testified that the cylindrical containers appeared to be the

type of containers which held the acids used in a meth lab. Smejkal testified that the containers he saw were consistent with the type of containers used in methamphetamine manufacture.

On May 11, 1988, Jung executed a search warrant on the residence. Inside the shed, he found chemicals commonly used in methamphetamine manufacture, along with assorted beakers and glassware. Specifically, he recovered: a flask which held 17.1 pounds of liquid containing 30 grams of phenylacetone and one gram of methamphetamine; a container which held 20.8 pounds of liquid containing 58.5 grams of phenylacetone and 3.5 grams of methamphetamine; a container which held about 4.4 pounds of a solution containing methylamine; and a container which held 13.6 pounds of a liquid containing 55.8 grams of phenylacetone. Jung found a bag containing a coffee filter in the house's middle bedroom. Methamphetamine was found in the filter, and appellant's fingerprints were on the bag. Jung seized an additional quantity of methamphetamine from the premises.

William Ginn, a chemist for the Texas Department of Public Safety, testified that the manufacturing process used in this case was an independent chemical synthesis. He stated that based upon the size of the flask seized during the search, about four to eight pounds of methamphetamine could have been made from one manufacturing process.

The defense called appellant's mother, Cynthia Short, as a witness. She testified that on May 1, 1988, appellant was living with her in San Antonio. She stated that he was with her every day and did not leave.

By point one, appellant complains that the evidence is insufficient to prove that the controlled substance weighed 400 grams or more by aggregate weight. In reviewing the sufficiency of the evidence, we must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.

*Butler v. State,* 769 S.W.2d 234, 239 (Tex. Crim.App.1989). We must take each case and review all the evidence to determine whether the State has proven beyond a reasonable doubt every element of the alleged crime and not just a plausible explanation of the crime. *Butler,* 769 S.W.2d at 239. In this case, the application paragraph stated, in relevant part:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 11th day of May, 1988, in Jackson County, Texas, **JAMES LLOYD SHORT, a/k/a JACK LLOYD SHORT,** the defendant, either acting alone or together with **Randall Delmond Gailey or Carolyn Askew Gailey,** as a party to the offense, as that term is hereinbefore defined, did intentionally or knowingly manufacture ... a controlled substance, to-wit: Methamphetamine, in an amount of 400 grams or more by aggregate weight, including any adulterants or dilutants, independently by means of chemical synthesis, as alleged in the indictment, then you will find the defendant guilty as charged in the indictment.

When proving the alleged weight of methamphetamine, the State may show: 1) the weight of the methamphetamine in its pure form; 2) the aggregate weight of the methamphetamine, including any adulterants and dilutants; 3) the aggregate weight of the methamphetamine, including immediate precursors; 4) the aggregate weight of the methamphetamine, including the "medium" in which it is found; or 5) the weight of a material, compound, mixture, or preparation containing some amount of methamphetamine (if alleged in the indictment). *Dowling v. State,* No. 107–89, slip op. 4–7, 1992 WL 278415 (Tex. Crim.App. October 14, 1992) (not yet reported).

In this case, the State proceeded under the theory that the aggregate weight of the methamphetamine included any adulterants and dilutants. In *Cawthon v. State,* 849 S.W.2d 346, the Court of Criminal Appeals stated that when adulterants and dilutants constitute a part of the weight used to increase punishment, the

State must prove the following beyond a reasonable doubt: (1) the identity of the named illegal substance; (2) that the added remainder (adulterants and/or dilutants) has not affected the chemical activity of the named illegal substance; (3) that the remainder (adulterants and/or dilutants) was added to the named illegal substance with the intent to increase the bulk or quantity of the final product; and (4) the weight of the illegal substance, including any adulterants and/or dilutants.

Here, William Ginn, the DPS chemist, testified that State's Exhibits 64–70 contained an aggregate weight of 1,093.7 grams of methamphetamine, including any of its adulterants and/or dilutants. No evidence showed that the adulterants and dilutants had not affected the chemical activity of the named illegal substance (methamphetamine), or that the adulterants and dilutants were added to the methamphetamine with the intent to increase the bulk quantity of the final product. *See Cawthon*, at 348. Point one is sustained.

Due to our disposition of point one, we need not address appellant's remaining points. TEX.R.APP.P. 90(a).

The trial court's judgment is REVERSED, and the case is REMANDED to the trial court with instructions to enter a judgment of acquittal.