Reversed and Rendered and Opinion filed January 28, 2010.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-08-00731-CR

___________________

 

William Dale Redwine, Appellant

 

v.

 

The State of Texas, Appellee



 



 

On
Appeal from the 7th District Court

Smith County,
Texas



Trial Court Cause No. 007-1560-07

 



 

 

OPINION

Appellant,
William Dale Redwine, was convicted of evading arrest using a vehicle, a
third-degree felony.[1] 
However, the evidence is legally insufficient to prove appellant, while operating
his vehicle, knew peace officers were attempting to arrest or detain him, an
essential element of the offense.  Therefore, we must reverse the conviction
and render a judgment of acquittal.

I.

BACKGROUND

On April 14, 2007,
appellant was driving his pickup truck on County Road 26, a rural asphalt road
in Smith County that has no lane dividers or medians, when he encountered a
Smith County Sheriff’s Office patrol car driving in the opposite direction. 
Appellant continued down the county road and then turned onto a dirt driveway
in an admitted effort to “avoid contact” with the deputies because his license
had been suspended.

Meanwhile, the deputies,
Thomas Hudson and John Shoemaker, had decided to turn around and pursue
appellant’s truck for allegedly driving too near the center of the undivided
road.  From a distance, they followed appellant’s truck along the county road
and then onto the dirt driveway.  According to Officer Hudson, they opted not
to deploy their vehicle’s emergency lights and siren for fear that appellant
might discover their pursuit and take steps to elude them.  Stated differently,
he testified they attempted to conceal their intent to detain appellant, and
“never had a chance” to activate their overhead lights.  On that point, the
State later conceded the deputies did not utilize any emergency signals at any
time during the pursuit.

The deputies found
appellant’s truck unoccupied at the end of the dirt driveway.  They exited
their patrol car and demanded appellant yield by shouting, “Sheriff!”  After
some time, appellant, who had run into the forest, returned on foot to his
truck where he was arrested.

For reasons that are
unclear, the State indicted appellant solely for evading arrest using a
vehicle.  After a jury trial, appellant was convicted of the charged
offense and sentenced to ten years’ imprisonment.[2]  

Appellant timely
appealed, bringing three issues.  In his first two issues, appellant challenges
the legal and factual sufficiency of the evidence supporting his conviction. 
In his third issue, appellant contends the trial court erred by refusing to
submit the lesser-included offense of evading arrest on foot.  Because we
sustain his legal-sufficiency challenge, we need not address his remaining
issues.

II.

ANALYSIS

Appellant was specifically
charged with evading arrest using a vehicle, a third-degree felony.  See
Tex. Penal Code Ann. § 38.04(b)(2)(A) (Vernon 2003 & Supp. 2009).  To
convict him of the charged offense, the State had to prove appellant, while
using a vehicle, intentionally fled from a person he knew to be a peace officer
attempting lawfully to arrest or detain him.  See id. §§ 38.04(a),
38.04(b)(2)(A).[3] 
This statute, which imposes varying degrees of criminal punishment commensurate
with the public danger posed by the evasive conduct,[4] supports an
important public policy encouraging suspects to yield to a show of authority by
law enforcement.  See Smith v. State, 739 S.W.2d 848, 850 (Tex. Crim.
App. 1987); Farrakhan v. State, 263 S.W.3d 124, 143–44 (Tex.
App.—Houston [1st Dist.] 2006), aff’d, 247 S.W.3d 720 (Tex. Crim. App.
2008); Johnson v. State, 864 S.W.2d 708, 722–23 (Tex. App.—Dallas 1993),
aff’d, 912 S.W.2d 227 (Tex. Crim. App. 1995).  

A person commits a crime
under Section 38.04 only if he knows a police officer is attempting to arrest
him but nevertheless refuses to yield to a police show of authority.  See
Brooks v. State, 76 S.W.3d 426, 434 (Tex. App.—Houston [14th Dist.] 2002,
no pet.); Hobyl v. State, 152 S.W.3d 624, 627 (Tex. App.—Houston [1st
Dist.] 2004) (“[T]he accused must know that the person from whom he
flees is a peace officer attempting to arrest or detain him.”), pet. dism’d,
improvidently granted, 193 S.W.3d 903 (Tex. Crim. App. 2006).  Here,
whether the evidence proves appellant’s requisite knowledge is the primary
dispute between the parties.

Appellant contends the
police made no show of authority until after he had already exited his
vehicle.  He therefore argues the evidence is legally insufficient to prove he
knew, while in his vehicle, that police were attempting to arrest or
detain him.  See Tex. Penal Code Ann. § 38.04(b)(2)(A) (requiring State
to prove the defendant used a vehicle while in flight).  

The State, in response,
does not dispute appellant’s claim that the deputies made no show of authority
while appellant was in his vehicle.  In fact, notwithstanding some equivocal
testimony from Officer Shoemaker, the State concedes the deputies did
not activate their vehicle’s overhead lights or otherwise demand appellant’s
surrender until after he had exited his truck.  Instead, the State contends the
jury could infer appellant’s knowledge of police pursuit from a written
statement in which appellant acknowledged he turned off the main road “to avoid
contact” with the officers he had passed earlier.  We will address both pieces
of evidence — the written statement and Officer Shoemaker’s comments — after an
examination of the appropriate standard of review. 

A.  Standard of
Review

The Texas Court of
Criminal Appeals recently revisited the legal-sufficiency standard of review in
Laster v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  Citing Jackson
v. Virginia,[5]
the Court observed “the United States Constitution requires that a criminal
conviction be supported by a rational trier of fact’s findings that the accused
is guilty of every essential element of a crime beyond a reasonable doubt.”  Id.
at 517; Clewis v. State, 922 S.W.2d 126, 132 (Tex. Crim. App. 1996)
(noting Jackson sets “the minimum standard for sustaining a
conviction under the Due Process Clause of the Fourteenth Amendment”).  Thus,
although we give proper deference to the factfinder’s role, we are to safeguard
against “the rare occurrence when a factfinder does not act rationally.”  Laster,
275 S.W.3d at 517–18.  We discharge this responsibility by properly applying
the legal-sufficiency standard of review to consider the evidence supporting a
criminal conviction.  See id. at 517.

Notably, we cannot simply
apply a “no evidence” standard of review[6]
to a legal-sufficiency challenge because that standard affords “inadequate
protection against potential misapplication of the reasonable-doubt standard.” 
Gollihar v. State, 46 S.W.3d 243, 246 n.4 (Tex. Crim. App. 2001). 
“Adherence to the no evidence standard is now, and has been for the last
decade, expressly forbidden by Jackson.  It is no longer permissible to
merely quote the Jackson standard and then to turn around and apply the
. . . no evidence standard as we have historically done.”  Butler v. State,
769 S.W.2d 234, 239 (Tex. Crim. App. 1989) (en banc), overruled on other
grounds by Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991).  Instead,
we are to view the evidence in the light most favorable to the verdict and then
determine whether “any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.”  Id. at 239
(emphasis added), cited in Canales v. State, 98 S.W.3d 690, 693 (Tex.
Crim. App. 2003).  Accordingly, we will uphold the jury’s verdict unless a
rational factfinder must have had a reasonable doubt as to any essential
element.  See Laster, 275 S.W.3d at 518.

B.  Appellant’s
Written Statement

We begin with appellant’s
written statement, the only evidence cited by the State in support of the
verdict.  On the night he was arrested, appellant provided the following
statement:

On 4-14-07 we was driving to 4 Corners and contacted Smith
Co. Patrol — turned off of road to avoid contact.  Driving gold chevy pickup. 
I came back to the truck and was arrested.  I did go into the woods on foot
away from deputies.  Was driving East on C.R. 26 and turned towards Mr.
Harris.  Bill went through the woods on foot.  I don’t drive because of
suspended D.L.  That’s why I didn’t want to be in contact with deputies.

The State construes this
statement as a confession that appellant knew the deputies he had passed were
attempting to arrest or detain him.  We disagree.  

“The gravamen of the offense is the evasion of an arrest,
not the evasion of a police officer.”  Jackson v. State, 718 S.W.2d 724,
726 (Tex. Crim. App. 1986) (emphasis added) (citation omitted).  Accordingly,
we cannot fairly read appellant’s professed desire simply to avoid further
contact with deputies seen on the road as a concession that he knew they
were actually trying to arrest or detain him.  See id.  Instead,
appellant’s statement reflects only that he had seen the deputies and hoped not
to do so again.  It does not, however, prove he had notice of their admittedly concealed
intention to arrest or detain him.  Therefore, appellant’s statement does not prove
the degree of knowledge necessary to constitute an offense under Section
38.04.  See Brooks, 76 S.W.3d at 434; Hobyl, 152
S.W.3d at 627.

C.  Officer Shoemaker’s Testimony

Appellant’s written
statement is the only evidence cited by the State in support of the judgment. 
However, under the legal-sufficiency standard of review, we must examine all
of the evidence adduced at trial.  See Clewis, 922 S.W.2d at 132 n.10; Chambers
v. State, 805 S.W.2d 459, 460 (Tex. Crim. App. 1991).  Therefore, although
the State does not highlight or even discuss Officer Shoemaker’s testimony
about their vehicle’s emergency lights, we are nevertheless required to include
his comments in our review.  See Chambers, 805 S.W.2d at 460.

During direct
examination, Officer Shoemaker was asked whether he activated the emergency
lights during their pursuit of appellant’s truck.  He replied, “To my
recollection, I believe I hit my overhead lights as I turned on the drive.  I
am not for sure on that, but I believe I did, yes, sir.”  However, on
cross-examination, after consulting his partner’s written report, which omitted
any mention of the emergency lights, he consistently admitted he did not have
“any recollection” whether the overhead lights in fact had been activated:

Q.        [D]eputy Hudson didn’t mention anything about
turning on the lights either, did he, in that report?

A.        No, ma’am, I don’t believe he did.

Q.        And that’s an important factor in this case, is
it not?

A.        Yes, ma’am, I guess it can be.

Q.        I mean, this is an evading case.  It’s important
to know if someone is running from law enforcement; and part of that would be
overhead lights on a car, fair to say?

A.        Yes, ma’am.

. . . .

Q.        [W]hen you make a stop and turn your lights on,
do you keep those lights on throughout the longevity of the stop?

A.        Yes, ma’am, I do.

Q.        So if your lights were on in this particular
case, the lights would be on through the longevity of the stop, fair to say?

A.        Yes, ma’am.

Q.        Is it fair to say we don’t have any
recollection of exactly whether or not the lights were on in this case?[7]

A.        Yes, ma’am.

Finally, on redirect, Officer
Shoemaker testified:

Q.        Deputy, maybe you had the lights on, maybe you
didn’t, you just don’t know?[8]

A.        Yes.

Notably, the remaining
evidence admitted during trial overwhelmingly indicates the deputies did not
activate their vehicle’s overhead lights before appellant exited his truck and
fled on foot.  For example, Officer Hudson testified the deputies chose not to
activate the emergency lights because they hoped to conceal their intent
to detain appellant:

If we — you turn on your lights too soon — if they have a
great distance ahead of you and then you turn on your lights, you are alerting
them already that — we are not going to be able to get them stopped.  They’re
going to be too far ahead.  So we try to get up closer to where we can hit our
lights before they, for lack of a better word, gun it.

He
confirmed, then, “we never had a chance to get up on [appellant] to activate
our lights.”  That testimony would explain the admitted lack of a dashboard
video[9]
documenting the pursuit, because, according to Officer Hudson’s uncontroverted
testimony, the videocamera automatically turns on and begins recording when the
emergency lights are activated.  Finally, his written report from the incident,
prepared shortly thereafter, does not mention the overhead lights.

To its credit, the State candidly
acknowledged, in both its opening statement and closing argument, that the
deputies did not utilize their emergency lights.  During opening, the
prosecutor advised the jury, “[T]hey didn’t turn on their lights because they
weren’t quite close enough.  And that would explain why there won’t be a video,
because when they hit their lights the video comes on.”  Then, during closing
argument, the State repeated the concession:  “And the only reason those lights
were never hit was because he had gotten so far ahead of them and almost
escaped them.”[10]

The State’s concessions,
apparently prompted by the overwhelming evidence, highlight a troubling aspect
of the manner in which Jackson v. Virginia has historically been applied
in Texas.  Jackson instructs courts to decide whether a rational trier
of fact could have found all of the essential elements of the offense beyond a
reasonable doubt, “viewing the evidence in the light most favorable to the
prosecution.”  Jackson, 443 U.S. at 319.  That standard, however, has
received somewhat unique treatment in Texas,[11]
where it has been interpreted as requiring reviewing courts to disregard all
evidence not supporting the verdict.[12] 
See Clewis, 922 S.W.2d at 132 n.10.  Further, because a jury may choose
to believe some portions of a witness’s testimony and disbelieve others,[13] we must seemingly
confine our analysis to Officer Shoemaker’s initial remarks during direct
examination:

Q.        Now, during this time, to your recollection,
you were – did you hit your overhead lights, to your recollection?

A.        To my recollection, I believe I hit
my overhead lights as I turned on the drive.  I am not for sure on that,
but I believe I did, yes, sir.[14]

Stated
differently, we must decide whether any rational trier of fact, considering
only this equivocal testimony, could have found appellant guilty beyond a
reasonable doubt.  See Clewis, 922 S.W.2d at 132; Butler, 769
S.W.2d at 239.

In resolving this issue,
we find guidance in well-rooted authority reviewing the evidentiary sufficiency
of a witness’s in-court identification of a criminal defendant.[15]  In that context,
courts have consistently held that an “uncertain in-court identification of an
accused as the perpetrator of a crime, standing alone, is insufficient to
support a guilty verdict.”  Anderson v. State, 813 S.W.2d 177, 179 (Tex.
App.—Dallas 1991, no pet.), cited in Swartz v. State, 61 S.W.3d 781, 788
(Tex. App.—Corpus Christi 2001, pet. ref’d); Bickems v. State, 708
S.W.2d 541, 543 (Tex. App.—Dallas 1986, no pet.); Ates v. State, 644
S.W.2d 843, 844–45 (Tex. App.—Tyler 1982, no pet.); United States v. Hawkins,
658 F.2d 279, 289 (5th Cir. 1981); United States v. Murray, 527 F.2d
401, 410 (5th Cir. 1976); United States v. Musquiz, 445 F.2d 963, 965–66
(5th Cir. 1971).[16] 
As the Fifth Circuit has explained:

            Questions of identification are, of course,
ordinarily for the determination of the jury.  If, however, as in this case,
the sole witness is unsure and there are no other connecting or corroborating
facts or circumstances the jury is left without evidence upon which to
translate unrelieved uncertainty into belief from the evidence beyond a
reasonable doubt.

Murray,
527 F.2d at 410 (citation omitted).

If an equivocal
identification can be coupled with other corroborating evidence, the conviction
still may be affirmed.  See Anderson, 813 S.W.2d at 179; Hawkins,
658 F.2d at 289.  Here, however, Officer Shoemaker’s hesitant testimony is the only
evidence suggesting appellant, while in his vehicle, failed to yield to a possible
show of authority by law enforcement.[17] 
See Brooks, 76 S.W.3d at 434; Hobyl, 152 S.W.3d at 627.  Moreover,
on that critical fact, the witness was unsure of his testimony and, given time
to reflect, admitted he had no recollection and simply did not know whether the
lights were activated.  In effect, the witness acknowledged in his own
testimony that he had a greater-than-reasonable doubt as to the
essential facts.  This kind of uncertain testimony, had it been offered to
establish the appellant’s identity, would be legally insufficient, standing
alone, to prove guilt beyond a reasonable doubt:

In the instant case we have one witness who testified that
she could not identify the appellant, and a second who identified him in one
breath, but stated in the next breath that the man who allegedly passed him the
counterfeit bills had a bump on his head, which “bump” was absent from the
appellant’s head.  In the absence of other evidence to corroborate Mrs.
Sanchez’ nonidentification, and Mr. Cancino’s rather ambivalent identification,
we are doubtful that there was sufficient evidence upon which to base a finding
of guilty beyond a reasonable doubt.

Musquiz,
445 F.2d at 965–66; see also Bickems, 708 S.W.2d at 542–43 (concluding
in-court identification to be insufficient, standing alone, after witness
initially testified he “was sure appellant was the individual who robbed him”
but later indicated he was “not that positive” about the perpetrator’s
identity); Ates, 644 S.W.2d at 844–45 (reversing conviction because
victim’s “strongest testimony” consisted merely of uncertain statements like “I
guess this is her” and “This look[s] like her”) (citing Phillips v. State,
164 Tex. Crim. 78, 297 S.W.2d 134, 135 (1957)).

Here, in the absence of
other evidence, the jury could not translate Officer Shoemaker’s uncertainty
into belief beyond a reasonable doubt.  See Murray, 527 F.2d at 410. 
Therefore, properly applying the legal-sufficiency standard of review, we hold
no rational trier of fact could have found appellant guilty beyond a reasonable
doubt of evading arrest using a vehicle, the only offense listed in the
indictment.[18] 
See Jackson, 443 U.S. at 319; Butler, 769 S.W.2d at 239.  We
sustain appellant’s first issue.  Having done so, we need not reach appellant’s
remaining issues.

III.

CONCLUSION

The State did not carry
its burden of proving beyond a reasonable doubt that appellant, while in his
vehicle, knew deputies were attempting to arrest or detain him, an essential
element of the charged offense.  See Tex. Penal Code Ann. § 38.04(b)(2)(A). 
Therefore, we hold the jury’s verdict is not supported by legally sufficient
evidence under the standard of review announced in Jackson v. Virginia
and adopted by the Texas Court of Criminal Appeals.  See Butler, 769 S.W.2d
at 239.  Accordingly, we must reverse the judgment and render a judgment of
acquittal on the charge of evasion of arrest using a vehicle.  See Clewis,
922 S.W.2d at 133.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

 

Panel consists of Chief
Justice Hedges, and Justices Yates and Sullivan.

Publish
— Tex. R. App. P. 47.2(b).









[1] The offense of evading
arrest, usually a Class A misdemeanor, is punishable as a third-degree felony
if the actor uses a vehicle while in flight and, like appellant, has been
previously convicted of the same offense.  See Tex. Penal Code Ann. §
38.04(b), (b)(2)(A) (Vernon 2003 & Supp. 2009).





[2] Appellant was later
sentenced to an additional five years’ imprisonment for jumping bail.  See
Tex. Penal Code Ann. § 38.10 (Vernon 2003).  This court has affirmed that
conviction.  See Redwine v. State, No. 14-08-00730-CR, 2009 WL 2004358,
at *1 (Tex. App.—Houston [14th Dist.] July 9, 2009, no pet.) (mem. op., not
designated for publication).





[3] “An offense under this
section is . . . a felony of the third degree if . . . the actor uses a vehicle
while the actor is in flight and the actor has been previously convicted under
this section[.]”  Tex. Penal Code Ann. § 38.04(b)(2)(A).  Appellant stipulated
to a previous conviction for evading arrest.  See id.





[4] See id. § 38.04(b)
(providing for punishments ranging from those associated with a Class B
misdemeanor, for ordinary evasion on foot, to second-degree felony, if the
attempt to apprehend a suspect results in another’s death).





[5] 443 U.S. 307, 316 (1979).





[6] Under a “no evidence”
standard, a reviewing court would affirm the judgment if any evidence
supported the conviction.  See Gollihar v. State, 46 S.W.3d 243, 246 n.3
(Tex. Crim. App. 2001) (citing Thompson v. Louisville, 362 U.S. 199, 199
(1960)).

 





[7] Emphasis added.





[8] Emphasis added.





[9] Officer Hudson testified,
“[The] [v]ideo did not come on because we didn’t have our lights on, so they
didn’t come on.”





[10] Appellant does not
contend the prosecutor’s remarks represent a judicial admission by the State.  See
Reed v. State, 14 S.W.3d 438, 440 (Tex. App.—Houston [14th Dist.] 2000,
pet. ref’d); Velez v. State, 240 S.W.3d 261, 265 (Tex. App.—Houston [1st
Dist.] 2007, pet. ref’d); Davidson v. State, 737 S.W.2d 942, 948 (Tex.
App.—Amarillo 1987, pet. ref’d).





[11] Our research uncovered
only a handful of other jurisdictions that disregard evidence favorable to the
defendant in a legal-sufficiency review.  See Massachusetts v. Caparella,
874 N.E.2d 682, 687 (Mass. App. Ct. 2007); Moore v. Mississippi, 996 So.
2d 756, 760 (Miss. 2008); Missouri v. White, 798 S.W.2d 694, 697 (Mo.
1990).





[12] One might argue that, by
focusing only on favorable evidence and disregarding all evidence
contrary to the verdict, the reviewing court effectively ignores Jackson
and Butler by simply applying a test that looks for some evidence
supporting the verdict.  See Butler, 769 S.W.2d at 239 (likening the
“any evidence” test to a no-evidence rule that “differs not at all from” the Thompson
standard abandoned in Jackson).  However, the United States Constitution
requires us to subject evidence to review using a magnifying glass that incorporates
the reasonable-doubt burden of proof.  See Jackson, 443 U.S. at 318–19; Laster,
275 S.W.3d at 517; Butler, 769 S.W.2d at 239.  That is, as the Texas
Supreme Court has noted:

Beginning with the United
States Supreme Court’s opinion in Jackson v. Virginia, appellate courts
have recognized that, while “one slender bit of evidence” may be all a
reviewing court needs to affirm a verdict based on the preponderance of the
evidence, a higher burden of proof requires a higher standard of review. . . . 
[T]he standard for legal sufficiency works in tandem with the standard of
review — “whenever the standard of proof at trial is elevated, the standard
of appellate review must likewise be elevated.”  If the rule were otherwise,
legally sufficient evidence to support a preponderance-of-the-evidence verdict
would satisfy the higher burdens as well, thus rendering their differences
meaningless.

City of Keller v. Wilson,
168 S.W.3d 802, 817 (Tex. 2005) (citations omitted) (emphasis added).  Thus,
disregarding all contrary evidence, no matter how mountainous or compelling it
may be, appears incongruous with the reviewing court’s task of deciding whether
a rational factfinder could have found a defendant guilty beyond a
reasonable doubt given that it is the evidence contrary to the
verdict that commonly injects the element of “reasonable doubt” into the jury’s
deliberations.

Nevertheless, in this case, appellant does not challenge
the constitutionality of the “consider-and-disregard” component of the
legal-sufficiency standard of review.  See Pena v. State, 191 S.W.3d
133, 137–38 (Tex. Crim. App. 2006) (cautioning appellate courts against
deciding constitutional issues sua sponte).  Moreover, we need not
address this issue here because, even while we set aside all of the copious
evidence contrary to the verdict, we still find the remaining evidence legally
insufficient to support the judgment of conviction.





[13] See Esquivel v. State,
506 S.W.2d 613, 615 (Tex. Crim. App. 1974); Bargas v. State, 252 S.W.3d
876, 887 (Tex. App.—Houston [14th Dist.] 2008, no pet.).





[14] Emphasis added.





[15] While we have not
located any authority applying the equivocal-identification rule to proof of other
essential elements of an offense, we see no compelling reason for treating the
two differently.  Naturally, misidentification entails an “awful risk” of
convicting the wrong person of a crime.  See United States v. Marchand,
564 F.2d 983, 985 (2d Cir. 1977).  However, neither should a reviewing court
permit proof of an essential element of the offense only by testimony
that is admittedly uncertain.  That scenario poses the unacceptable, and
equally grave, possibility of wrongly convicting a person who may have
committed no crime at all.





[16] See also Marchand,
564 F.2d at 986 (“[A] jury is free, on the basis of a witness’ demeanor, to
‘assume the truth of what he denies’ although a court cannot allow a civil
action, much less a criminal prosecution, to go to the jury on the basis of
this alone.”) (emphasis added) (quoting Dyer v. MacDougall, 201 F.2d
265, 269 (2d Cir. 1952)). 





[17] Indeed, the absence of
corroborating evidence distinguishes this case from the examples discussed in Goodman
v. State, 66 S.W.3d 283 (Tex. Crim. App. 2001).  There, Judge Cochran posed
a series of hypothetical situations involving a modern-day Cretan Liar, with
five previous perjury convictions, testifying for the prosecution against a
defendant charged with possession of cocaine.  See id. at 285–86.  In
one of those examples, the Cretan Liar testifies that, although he is almost
blind, he is “pretty sure” he saw the defendant place a baggie of cocaine on
the sidewalk.  See id. at 286 n.4.  According to the Court, a rational
trier of fact could believe the Cretan Liar’s testimony despite his poor
eyesight and equivocal testimony.  See id.  However, unlike here, the
Cretan Liar’s testimony is bolstered by corroborating evidence that the baggie
of cocaine was found only two feet away from the defendant with no one else in
sight, “support[ing] an inference that the cocaine belongs to defendant.”  Id.
at 285 (emphasis removed).  Here, there is no such corroborating evidence.





[18] Because the issue is not
before us, we need not decide whether the evidence would support a conviction
for the lesser offense of evasion on foot.  See Tex. Penal Code Ann. §
38.04(a).