IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN



 




NO. 3-90-181-CR





DAVID NAVARETTE GARCIA,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT



NO. 38,192, HONORABLE JACK W. PRESCOTT, JUDGE



 





PER CURIAM

 Appellant was tried by a jury, which found him guilty of the offense of aggravated
sexual assault (1) and assessed punishment at twenty years imprisonment. We will affirm the
judgment of the trial court.


BACKGROUND



 The complainant, L.K.K., testified that on Saturday night, May 20, 1989, she and
her boyfriend Jimmy (2) "went to the bingo" in Temple. Jimmy won some money, so the couple
decided to go out and, not having a car, had L.K.K.'s parents drop them off downtown. The

couple stopped at a series of bars to drink beer. While at one of these, the Raven, Jimmy spoke
to appellant, whom he knew, and invited him to visit the couple sometime. L.K.K. and Jimmy
left the Raven and walked to another bar. Eventually, the couple decided to return to the Raven
to get a ride home. En route, Jimmy, who was on probation following a DWI conviction, was
arrested for violation of his probation by a Temple police officer who recognized him. L.K.K.
accompanied Jimmy to the police station. When she learned she would not be able to obtain his
release that night, she called her mother in an attempt to get a ride home. Unsuccessful, she
decided to walk the two blocks to the Raven and try to get a ride from someone she knew.

 L.K.K. saw appellant and another man she did not recognize getting into a car. 
She testified that she had known appellant for approximately ten years; that his brother, Raul, had
once been a roommate with her and two other women; and that appellant had also been a customer
at the convenience store where L.K.K. worked. L.K.K. testified that it was close to 2:00 a.m.,
closing time at the Raven, and she did not have any other hope of getting a ride. She asked
appellant to give her a ride to her parents house or to her home. Appellant agreed to give her a
ride.

 Appellant and his companion rode in the front and L.K.K. rode in the back seat of
the car. They stopped at a convenience store, where L.K.K. purchased cigarettes. At this time
appellant asked L.K.K. if she wanted to drink a beer, and she said "Yes." When appellant
resumed driving, he told L.K.K. that he had to stop somewhere before taking her home, and
started driving out of town. As they drove, appellant and the other man asked L.K.K. if she
would ride up front with them. She declined. They then began to make suggestive sexual
remarks to her and she testified this made her afraid. Ultimately, appellant stopped the car on
Bottoms Road and told L.K.K. he wanted to search her for weapons. When she stepped out of
the car, appellant took a pocket knife from L.K.K. (3) Then appellant pushed L.K.K. against the
car and held her arms back while the other man pulled L.K.K.'s pants and panties down. 
Appellant began hitting L.K.K. She fought her attackers, grabbing and pulling appellant's hair. 
Appellant then placed both his hands around her throat and began choking her. He continued to
choke her until she could no longer maintain her hold on his hair. When she released him, he
began to beat her face and head with his fists. Meanwhile, the second man raped her. When he
finished, appellant turned L.K.K. around still holding her against the car, in what L.K.K. believed
to be an attempt to anally rape her. She raised her hand and told him he would have to kill her
first. L.K.K. testified that appellant instead penetrated her vagina. He then withdrew, zipped up
his pants, and shoved L.K.K. to the ground, making the remark: "What if she has AIDS?" Then
both attackers drove off in the car. L.K.K. walked to a nearby farm house for help.


DISCUSSION AND HOLDINGS



 In his sole point of error appellant contends that the trial court erred in overruling
his objection to the submission of the offense of aggravated sexual assault in the court's charge
on guilt or innocence because there was not sufficient evidence to support the submission. (4)
 
Specifically, appellant argues that the evidence of the force used against L.K.K. demonstrates no
more than the degree of force required to show sexual assault, that is, lack of consent, but not
enough to place the victim in fear of death or serious bodily injury, the aggravating element. 
Essentially, appellant is arguing that the evidence does not support a finding that appellant's acts
placed the victim in fear of imminent serious bodily injury or death. If the evidence is insufficient
to support this finding, it is, ipso facto, insufficient to support the conviction. Therefore, we treat
appellant's point as a challenge to the sufficiency of the evidence to support the conviction. 

 In reviewing the sufficiency of the evidence, an appellate court looks at all the
evidence in the light most favorable to the verdict or judgment and determines whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable
doubt. Butler v. State, 769 S.W.2d 234, 239 (Tex. Cr. App. 1989). In reviewing the sufficiency
of the evidence to support the jury's implied finding of the aggravating element, we review all of
the evidence to determine whether the acts, words or deeds of the appellant were sufficient to
place a reasonable person in complainant's circumstances in fear of death or serious bodily injury
to be imminently inflicted upon her at the hands of her attackers. Stephens v. State, 717 S.W.2d
338, 340-41 (Tex. Cr. App. 1986); Dacquisto v. State, 721 S.W.2d 603, 604 (Tex. App. 1986,
pet. ref'd).

 The evidence is undisputed that appellant did not verbally threaten L.K.K.'s life
or display a weapon. If the aggravating element exists, it must come from the nature of
appellant's acts and the depth of his victim's fear. Dacquisto, 721 S.W.2d at 604. L.K.K.
testified that appellant began striking her with his fists about her face and head before she grabbed
his hair. He then choked her until she felt her face change colors, could not breathe, and had to
let go of appellant's hair. He thereupon resumed beating her with his fists about the head and
face. She testified he struck her at least eight to ten times. She had deep bruises on her face,
arms, neck, back, and legs; a bloody mouth; and a sore head, all of which she attributed to his
physical assault on her. She further stated: "I was fighting for my life. I thought he [appellant]
was going to kill me." Later in her testimony she stated: "[H]e kept choking me, kept on
choking, I couldn't breathe any longer." In the course of the struggle, she lost both earrings and
ripped appellant's watch from his wrist. State's exhibits 1 through 10 corroborate her description
of the physical injuries she sustained during the attack. The woman on whose door L.K.K.
knocked for help testified "Well, if I was to see her now I wouldn't recognize her because she was
so badly beaten in her face." 

 Appellant's choking of L.K.K., combined with the severity of the beating he
inflicted upon her, and the fact that he continued to beat her after she ceased resisting him, is
more than sufficient to place a reasonable person in complainant's circumstances in fear of death
or imminent infliction of serious bodily injury. (5) We hold the evidence is sufficient to: (1) support
the court's submission to the jury of an instruction on the offense of aggravated sexual assault;
(2) support an implied finding by the jury that appellant had placed L.K.K. in fear of death or
imminent infliction of serious bodily injury; and (3) support the verdict of guilt and the judgment
of the court. Appellant's point of error is overruled.

 The judgment of conviction is affirmed.



[Before Justices Powers, Aboussie and Kidd]

Affirmed

Filed: May 15, 1991

[Do Not Publish]
1. Tex. Pen. Code Ann. § 22.021(a)(2)(A)(ii) (1989).
2. Jimmy's last name is deleted to avoid possible revelation of complainant's identity through
her relationship with him.
3. The pocket knife was part of the personal property Jimmy had entrusted to her care when he
was being jailed.
4. The trial court had before it the following objection to the charge:


 Mr. Kreimeyer: Your Honor, I'm going to object to the submission of the offense
of aggravated sexual assault because I don't think that the evidence presented forces
the -- been no evidence of any threats of death or serious bodily injury and the acts
of the force used against the complainant L.K.K. are just as consistent with the force
required of sexual assault as they are with the force placing her in fear of death or
serious bodily injury under aggravated sexual assault and I don't believe that's
sufficiently proven and will object to it on those grounds. 

5. Appellant cites Garcia v. State, 750 S.W.2d 922 (Tex. App. 1988, no pet.), in which the
rapist choked his victim into submission and the court found this sufficient to sustain his
conviction for sexual assault. Apparently, appellant cites Garcia for the proposition that choking
constitutes no more than evidence of the force necessary to show lack of consent in proving sexual
assault. However, the offense alleged in Garcia was sexual assault and not aggravated sexual
assault. The court did not have before it the question of whether choking the victim was evidence
of force such that the victim was placed in fear of death or imminent infliction of serious bodily
injury. For similar reasons, Bannach v. State, 704 S.W.2d 331 (Tex. App. 1985, no pet.), is
likewise distinguished.