Gill v. State 






NO. 10-90-069-CR

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          SAMMY WAYNE GILL,
                                                                                            Appellant
          v.

          THE STATE OF TEXAS,
                                                                                            Appellee

* * * * * * * * * * * * *

From 278th Judicial District Court
Leon County, Texas
Trial Court # 7286-B

* * * * * * * * * * * * *

O P I N I O N

* * * * * * *
          A jury convicted Appellant of aggravated assault and assessed his punishment at three years
in prison. See Tex. Penal Code Ann. § 22.02(a)(2) (Vernon Supp. 1991). He complains that
the prosecutor commented on his failure to testify at the punishment phase of the trial, that the
court erred in admitting an exhibit into evidence, and that the evidence was insufficient to sustain
the conviction. We will sustain his point concerning the prosecutor's comment on his failure to
testify, overrule all other points, and reverse the judgment and remand the cause to the trial court. 
          During an evening of drinking, a fight broke out between Appellant and Lloyd Corey. 
When Sammy Carroll, Appellant's nephew, tried to break up the fight, Appellant hit Carroll in
the face. Later at home, Appellant discovered that $25 was missing from his shirt pocket. 
Carrying a 30-30 rifle, Appellant set out in search of his money. He first went to his sister's
house where he shot two holes in the ceiling and shot at a pickup truck. While shooting at the
truck, he saw Carroll coming down the road on a bicycle. He pulled Carroll off the bicycle,
pointed the rifle at his stomach, and ordered him to help find the $25. At this time, a friend of
Appellant's, Bobby Bass, drove up and took Appellant home with him. When sheriff's officers
arrived at the scene, Carroll acted frightened and excited. He told them that Appellant had pointed
a 30-30 rifle at his stomach and threatened to shoot him. Meanwhile, Appellant left Bass's house,
going home. When Appellant began thinking about his lost money again, he left his home,
carrying a .22 rifle. However, law officers who had surrounded Appellant's home confronted
him. Appellant fired two shots in the air and fled. He was arrested hiding in a field, and the .22
rifle was found near an abandoned house on his escape route. Although Carroll testified on cross-examination that he did not think Appellant intentionally pointed the gun at him and that he
doubted he would use it, he also testified on direct-examination that it sounded as though Appellant
cocked the rifle and that the incident scared him. Appellant testified that he did not intentionally
point the rifle at Carroll but admitted that it may have accidentally touched him. 
          Appellant's sufficiency allegations are contained in points two through five. The
indictment charged Appellant as follows:
Sammy Wayne Gill . . . did then and there intentionally and knowingly threaten
Sammy Carroll with imminent bodily injury and did then and there use a deadly
weapon, to-wit: a rifle fire arm that in the manner of its use and intended use was
capable of causing death and serious bodily injury.
(Emphasis added). Appellant asserts that the State failed to prove that (1) a rifle was used during
the offense, (2) Appellant intentionally and knowingly threatened Carroll, and (3) the firearm in
the manner of its use and intended use was capable of causing death and serious bodily injury. We
must review the evidence in the light most favorable to the jury's verdict to determine if a rational
trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See
Butler v. State, 769 S.W.2d 234, 239 (Tex. Crim. App. 1989).
          We hold that the evidence was sufficient to prove the use of a rifle. When Carroll was
asked if it was a rifle that Appellant pointed at him, he responded, "Yeah, I believe so." Appellant
admitted in the following exchange on direct-examination that he carried a rifle during the course
of the offense: 
Q. And you saw Sammy Carroll. He approached you and then what happened?
A. We was standing there talking and I was stumbling around. I was pretty drunk. 
And I just reached up and grabbed him by the collar.
Q. The front of his collar?
          A. Yes, ma'am. 
Q. Did you have the rifle in you hand?
A. Yes, ma'am, I had it over here to my left, holding it in my left hand and I
grabbed him with my right hand. 
          We hold that the evidence was sufficient to prove that Appellant intentionally and
knowingly threatened Carroll. Appellant points out Carroll's testimony in which he said he
doubted Appellant would use the rifle. However, we are not determining whether Carroll actually
felt threatened. In Dickerson v. State, holding that a bar owner's lack of concern about bullets
being fired in his direction did not establish that there was no threat, the court stated: "The
offense charged is aggravated assault, not infliction of emotional distress. The bar owner testified
that the appellant `had it pointed toward me.' The pointing of a gun alone establishes the threat." 
Dickerson v. State, 745 S.W.2d 401, 403 (Tex. App.—Houston [14th Dist.] 1987, no pet.). 
Carroll testified that Appellant pointed the gun at his stomach and that he believed Appellant
cocked the rifle. This testimony, along with the officer's testimony that Carroll, acting frightened
and excited, told him that Appellant had pointed a rifle at his stomach and threatened to shoot him,
was sufficient to establish that Appellant knowingly and intentionally threatened Carroll. Although
Carroll testified on cross-examination that he had told the defense attorney a "few days" earlier
that he did not feel like Appellant intentionally pointed the gun at him, this statement went to the
weight of the evidence, and the jury was entitled to resolve the conflict in the testimony. See
Penagraph v. State, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981).
          Additionally, the evidence was sufficient to show that the rifle was, in the manner of its
use or intended use, capable of causing death or serious bodily injury. Appellant admitted that
he had fired the rifle five to six times before he approached Carroll. The damage to the ceiling
of Appellant's sister's home and to the truck parked outside her home proved the rifle was
operable. This proof, combined with the testimony that Appellant pointed the rifle at Carroll's
stomach, could lead a rational trier of fact to find that the rifle in the manner of its use or intended
use was capable of causing death or serious bodily injury. See Butler, 769 S.W.2d at 239. We
overrule points two through five.
          Appellant complains in point six that the court erred in admitting into evidence the .22 rifle
found near him at the time of his arrest. Appellant's objection to the admission of this rifle was
that it was irrelevant because it was not the gun used in the offense. Although the State contends
that the admission of the rifle was proper because the jury has the right "to hear what occurred
immediately before and after the offense on trial in order to properly assess the evidence," we hold
that the admission of the rifle was proper under the circumstances. The State proved the use of
the 30-30 rifle. Through unobjected-to testimony of an earlier witness, it also proved the use of
the .22 rifle and caused it to be demonstrated to the jury. This testimony showed that the .22 rifle
was carried by Appellant after the commission of the offense; because Appellant's use of the .22
rifle was already before the jury, the actual admission of the second rifle into evidence was not
error. We overrule point six.
          Although we find that Appellant has shown no error in his sixth point, he has successfully
demonstrated harmful error in his first point, in which he complains that the court erred in
overruling his objection to the prosecutor's comments made during argument at the punishment
phase because they constituted a comment on his failure to testify. The challenged arguments
were:
You know, how do we-as far as probation goes, how do we even know that Sammy
Gill knows what probation is? How do we know he knows what he'll be expected
to do on probation? How do we know that from the evidence that we've heard? 
[Objection]
From the evidence that we've heard how do we know that? How do
we know he knows what probation is? How do we know that he
can abide by the terms and conditions of probation?
[Objection]
How do we know that? They're asking you to roll the dice and take
a gamble on something that--that you and I don't know. 
          Appellant testified at the guilt-innocence phase of the trial, but elected not to testify at the
punishment phase. See Stewart v. State, 666 S.W.2d 548, 549 (Tex.App.-Dallas 1984, pet. ref'd). 
Article 38.08 of the Code of Criminal Procedure forbids any comment on the right of a defendant
to remain silent or his failure to testify. Bower v. State, 769 S.W.2d 887, 906 (Tex. Crim. App. 
1989); Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 1979). To constitute a violation of
article 38.08, the language must be either manifestly intended, or of such a character that the jury
would naturally and necessarily take it to be a comment on the defendant's failure to testify. 
Bower, 769 S.W.2d at 906. The challenged comment must be viewed from the standpoint of the
jury and must be more than an implied or indirect allusion to the defendant's silence. Id. at 907. 
          The challenged comments in this case did not fall in one of the four permissible areas of
jury argument. See Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973). They
were not a (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer
to argument of opposing counsel, or (4) plea for law enforcement. See id. Moreover, by telling
the jury that it did not "know what [Appellant] knows," the prosecutor's remarks called the jury's
attention to the absence of evidence that—in this case—only the testimony of Appellant could
supply. See Montoya v. State, 744 S.W.2d 15, 35 (Tex. Crim. App. 1987) (on rehearing), cert.
denied, 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988). We find no merit in the State's
argument that "the jury could have construed the prosecutor's remarks as a reference to the failure
of [Appellant's two witnesses] to testify about possible conversations between them and the
Appellant concerning the terms and conditions of probation." While sometimes other evidence,
besides a defendant's testimony, can shed light on what a defendant knows, only the defendant can
tell what he actually knows. We hold that the prosecutor's continued emphasis of the
question—How do we know what he knows?—did nothing but remind the jury that Appellant did
not testify. Thus, we believe that the comments were of such a character that the jury naturally
and necessarily took them to be a comment on Appellant's failure to testify. See Bower, 769
S.W.2d at 906.  
          Having found error, we turn to the question of harm. The Court of Criminal Appeals
stated in Harris v. State that in a harmless error analysis we are to focus on the error and its effect
on the process whereby jurors apply law to facts to reach a verdict, rather than on the result,
examining whether the trial was essentially a fair one. See Harris v. State, 790 S.W.2d 568, 587-88 (Tex. Crim. App. 1989). If the error was of a magnitude that it disrupted the jury's orderly
evaluation of the evidence, no matter how overwhelming the overall evidence might have been,
then the conviction is tainted. Id. The procedure is: isolate the error and all its effects, then ask
whether a rational trier of fact might have reached a different result if the error and its effects had
not resulted. Id. In isolating the error and its effects, consideration may be given to the source
of the error, the nature of the error, whether and to what extent it was emphasized by the state,
its probable collateral implications, and other considerations suggested by the facts of the case. 
Id. at 587. In determining whether a rational trier of fact might have reached a different
conclusion, we may consider how much weight a juror would probably place upon the error and
its probable impact on the jury in light of the existence of the other evidence. See id.
          In isolating the error, we note that the prosecutor stepped out of the bounds of proper jury
argument, See Alejandro, 493 S.W.2d at 231; that the jury was entitled to consider the comments
because no instruction to disregard was given, See Bower, 769 S.W.2d at 907; that the prosecutor
continued to emphasize Appellant's silence by repeatedly stressing to the jury that it did not "know
what he knows," and that the jury gave Appellant a three-year prison sentence out of a possible
ten, with no probation. See Tex. Penal Code Ann. § 12.34 (Vernon Supp. 1991). Because of
the nature of the error and the circumstances surrounding it, we believe that the jury might have
reached a different result if this error and its effects had not resulted. See Harris, 790 S.W.2d at
588. Therefore, we cannot say, beyond a reasonable doubt that the error made no contribution
to Appellant's punishment. See Tex. R. App. P. 81(b)(2). 
          Because the harmful error occurred at the punishment phase of the trial, we reverse the
judgment and remand the cause to the trial court for further proceedings consistent with Code of
Criminal Procedure article 44.29(b). See Ex parte Sewell, 742 S.W.2d 393, 397 (Tex. Crim.
App. 1987) (on rehearing); Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp. 1991).
 
                                                                                  BILL VANCE
                                                                                 Justice

Before Chief Justice Thomas
          Justice Cummings and
          Justice Vance
Reversed and remanded
Opinion delivered and filed July 25, 1991
Do not publish