MUCKELROY V. STATE 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-90-077-CR





WILLIAM L. MUCKELROY,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 




FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT



NO. CR-89-165, HONORABLE CHARLES R. RAMSAY, JUDGE



 




 After a trial to the court, William L. Muckelroy, appellant, was convicted of
involuntary manslaughter. See Tex. Penal Code Ann. § 19.05(a)(1) (1989). The trial court
assessed punishment at ten years' confinement in the Institutional Division of the Texas
Department of Criminal Justice, probated for ten years. In addition, appellant was fined $5000
plus court costs, sentenced to serve six months in the Comal County jail, ordered to pay
restitution of $15,000, and ordered to perform 200 hours of community service. In a single point
of error, appellant asserts that the evidence was legally insufficient to support his conviction. We
will affirm the conviction.



BACKGROUND


 The State's evidence showed that about 11:30 p.m. on July 7, 1989, Regina Haas
was driving a Nissan pickup north on Interstate Highway 35 between San Antonio and New
Braunfels, where the posted speed limit is 55 miles per hour. Traci Ann Balmos, a passenger in
the Nissan pickup, testified that Haas was driving in the outside (right-hand) lane. Balmos
testified that suddenly she saw bright lights coming toward them; the bright lights belonged to a
truck that was airborne and which struck the Nissan pickup, shearing off its top. As a result of
the collision, Haas was killed and Balmos was injured.

 Appellant was driving the truck that struck the Nissan pickup. He testified that just
prior to the accident, he was traveling south on IH 35 at about sixty miles per hour when the
following occurred:



I was approaching the--I was about a mile--over a mile--about a mile or two before
the Solms Exit, traveling southbound on 35. I was in the right lane. I had been
traveling at about the same rate of speed as another car to my left that was in the
left lane.


 I--I just--I felt uncomfortable with the--with the car in my left lane
being--traveling at the same rate of speed. It wasn't--it was--I just didn't feel right,
so I decided to pass the car. There was no traffic ahead of that car in front of me. 
I accelerated to pass the car, the car suddenly just veered over in front of me. It
didn't brake or anything. It just came in front of me.


 I reacted to try to avoid hitting that car. I turned left to try to go
around it and brake to slow down. I--I went off to the left. My truck, the brakes
locked up. My truck kept sliding across the highway.


 I--I tried to--when my front left wheel went off of the highway, I
tried to turn the truck back to the right to try to get back up on the highway
because of the V--the steepness of that median, the gully, the trench, or whatever
the median was. I started to slide in there. I turned my wheel to the right, and
that's all I remember. I just went down into it.



It is undisputed that appellant's truck continued through the median and into the northbound lanes
of IH 35, striking Haas's Nissan pickup. However, in regard to the events leading up to that
point, the witnesses presented by the State reveal a somewhat different picture than that painted
by appellant.

 Bobby and Brenda Johnson were headed south on IH 35 in their family car with
their two children. Bobby Johnson testified that he was driving in the right-hand lane when the
following occurred:



 I was just fixing to get off on my--the exit that I always take to go
home, the Solms exit.


 . . . .


 Just after I had turned on my blinker to get off on the exit ramp, I--all of a sudden my rearview mirror and all--and all my mirrors just flashed with
headlights. And at that immediate--I immediately slammed on the brakes and
pulled over--swerved over to the right on--right on to the ramp.


 And as I did that, I looked over to my left side and noticed the
pickup was right on top of me. And I heard the tires squealing, and I don't know
if it was skidding or squealing, but it--I heard the tires squealing. And the pickup
then proceeded to go all the way across the bar ditch, and then as soon as it hit the
other side of the bar ditch, it went into the air over one lane of traffic and then hit
a car, and then proceeded to roll up the side of the embankment, and then it came
to rest on top of the guardrail on the other side.



Bobby Johnson further testified that appellant's truck was traveling at an excessive rate of speed
and that after appellant's truck struck the Nissan pickup, appellant's truck rolled at least four
times.

 The State then called Brenda Johnson who testified to the following:



Q: Mrs. Johnson, what was the first thing that you saw that indicated to you that
there was a problem that might occur with the traffic?


A: There were lights in the mirrors, the rearview mirror and both side mirrors,
when we were getting off [IH 35 onto the Solms Road exit].


Q: Was this the type of light that--where a car is a long way off and gradually
gets brighter and brighter as it comes along, or was this a situation where it
just came on suddenly?


A: Suddenly.


Q: Okay. What did you observe about the vehicle that caused these sudden
lights in your mirrors?


A: I would say the speed getting there.


 . . . .


Q: Approximately how fast were you traveling at the time that this vehicle came
upon you?


A: Probably 55 or a little bit slower, sir.


Q: Okay. And what action did your husband take to avoid any contact with this
oncoming vehicle that was coming from behind you?


A: He swerved to the right, sir.


Q: And what did the other vehicle do?


A: Swerved to the left.


 . . . .


Q: What happened to that vehicle?


A: It went through the median and into northbound 35.



Brenda Johnson then testified that appellant's truck became airborne, struck the cab of a vehicle
heading north on IH 35, and then rolled five or six times before coming to rest.

 The State then called Richard Ney who testified that he was heading north on IH
35 when he saw a set of headlights headed toward him across the median. Ney stated that the
vehicle went airborne, passed his vehicle, and struck another vehicle in the adjacent lane. He
testified that the vehicle was traveling at a high rate of speed.

 The State then called an expert in accident reconstruction who testified that, on the
basis of calculations using mathematical formulas and principles of physics, appellant's truck must
have been traveling at least 77 miles per hour when it became airborne. Based on other factors,
the expert further testified that appellant's truck must have been traveling at a minimum initial
speed (i.e., on the highway) of 88 miles per hour. Appellant presented expert testimony that his
initial speed was only 62.48 miles per hour.

 The State also presented evidence that appellant's blood contained an alcohol
concentration of 0.07. Although this level of alcohol concentration is low enough to escape the
presumption of intoxication mandated by Tex. Rev. Civ. Stat. Ann. art. 6701l-1(a)(2)(B) (Supp.
1992), the State presented testimony from a physician that the average person with a blood-alcohol
concentration of .07 would "feel the effects" of the alcohol, including slower reflexes and
"timing."



DISCUSSION


 In determining whether the evidence was legally insufficient to support appellant's
conviction, we must determine whether after viewing the evidence in the light most favorable to
the prosecution, any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); Butler v. State, 769
S.W.2d 234, 239 (Tex. Crim. App. 1989).

 A person commits the offense of involuntary manslaughter if he recklessly causes
the death of an individual. Tex. Penal Code Ann. § 19.05(a)(1) (1989). The indictment charged
appellant with recklessly causing the death of Regina Haas "by accident while operating his
vehicle at an excessive rate of speed, causing the said defendant to lose control of his vehicle." 
With regard to "reckless" behavior, the Texas Penal Code provides:



 A person acts recklessly, or is reckless, with respect to
circumstances surrounding his conduct or the result of his conduct when he is
aware of but consciously disregards a substantial and unjustifiable risk that the
circumstances exist or the result will occur. The risk must be of such a nature and
degree that its disregard constitutes a gross deviation from the standard of care that
an ordinary person would exercise under all the circumstances as viewed from the
actor's standpoint.



§ 6.03(c) (1974).

 After reviewing the record, we conclude there is ample evidence to support a
finding that appellant recklessly caused the death of Regina Haas. The State presented evidence
that: (1) appellant was traveling south on IH 35 at a rate of at least 88 miles per hour in a 55-mile-per-hour zone; (2) appellant suddenly came upon a vehicle that was traveling 55 miles per
hour or slower and that was about to exit the interstate; (3) in order to avoid hitting the exiting
vehicle, appellant hit his brakes and swerved to the left; (4) as a result appellant's truck went
across the median, became airborne, and struck Haas's pickup that was traveling north on IH 35;
and (5) these events occurred at a time when appellant had consumed enough alcohol to affect his
reflexes and driving ability.

 Although appellant presented contrary evidence, the trial court in a bench trial is
the sole judge of the credibility of the witnesses and may accept or reject any part or all of the
testimony given by State or defensive witnesses. Minx v. State, 615 S.W.2d 748, 749 (Tex.
Crim. App. 1981); Buchanan v. State, 780 S.W.2d 467, 470 (Tex. App. 1989, pet. ref'd). A
rational trier of fact could have concluded that appellant was aware of and disregarded the risk
created by his excessive speed and consumption of alcohol, and that such was a gross deviation
from the standard of care that an ordinary person would exercise under the circumstances.



CONCLUSION


 Based on our foregoing discussion, we conclude that a rational trier of fact could
have found beyond a reasonable doubt that appellant recklessly caused the death of Regina Haas. 
We overrule appellant's point of error and affirm the conviction.



 

 J. Woodfin Jones, Justice

[Before Justices Powers, Jones and Kidd]

Affirmed

Filed: May 13, 1992

[Do Not Publish]