02-10-017-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00017-CR

 

 


 
 
 Sean Douglas Turney
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

------------

FROM County
Criminal Court No. 1 OF Denton COUNTY

------------

MEMORANDUM
OPINION[1]

----------

A jury
convicted Appellant Sean Douglas Turney of family violence assault causing
bodily injury.  The trial court sentenced him to serve 365 days’ confinement in
the Denton County Jail, probated for twenty months, and to pay a fine of $500. 
In three issues, Appellant challenges the sufficiency of the evidence to
support his conviction and the admission of evidence of a prior conviction.  Because
the evidence is sufficient to support his conviction and because we hold that
the trial court’s error in admitting the evidence of the prior conviction was
harmless, we affirm the trial court’s judgment.

I. 
Facts

Appellant
was charged with family violence assault causing bodily injury.  The
information alleged that he had intentionally, knowingly, or recklessly caused
bodily injury to Nicole Thomas by grabbing, pushing, or striking her with his
hand; by striking her with a telephone; or by striking her with his elbow.  The
information also alleged that Thomas was a member of his family, a member of
his household, or a person with whom he has or has had a dating relationship.

Appellant
and Thomas were involved in a dating relationship.  At trial, Thomas testified
that on March 22, 2009, they began arguing about her moving in with him; Thomas
testified that she did not want to move in with him because she was scared of
him.  She testified that she woke up at 2:30 in the morning and got up because
she wanted to write down her thoughts.  Thomas stated that Appellant became
angry and asked why she was up at that time of night.  She testified that he
accused her of cheating on him and demanded to see her cell phone.  She stated
that she refused and put her phone in her back pocket.  According to Thomas, Appellant
came up to her “like he was going to hug [her]” and then grabbed the phone.  She
asked for her phone back.  Thomas then testified,

And he was blocking
himself, and I was kind of reaching over.  And the next thing I know, just
something, either a cell phone or a hand or an elbow, something hit me so hard
that I had literally flown back, hit my head and my back on the carpet.

Thomas
testified that Appellant went into the bathroom, and she followed him, at which
point he slammed her against the wall and then tackled her.  Thomas stated that
she began screaming for help and banging on the wall so that a neighbor would hear. 
Appellant released her, and she went into the living room and headed toward the
front door.  Thomas testified that Appellant blocked her from heading toward
the door and pushed her onto the couch.  He then walked back toward the
bathroom.

When
Appellant walked into the bathroom, Thomas stated, she grabbed “as much stuff
as [she] possibly could,” ran outside to a friend’s apartment in the same
complex, and knocked on the door.  No one answered, and no one answered when
she knocked on another neighbor’s door.  Thomas testified that she then realized
that she did not have her keys or her phone, so she returned to the apartment. 
According to Thomas, Appellant “was just kind of standing there looking at [her]
like nothing had really happened.”  Her keys and her phone were on the coffee
table, so she took them and left.  Appellant did not try to stop her.  Thomas testified
that she went to her car and slept for a while, and then, after driving around “for
a little bit,” drove to the police station and reported what had happened.  She
could not remember how long she had slept, but she arrived at the police
station by 7:00 a.m.

Officer
Terry Farmer of The Colony Police Department testified that on March 23, 2009,
Thomas came into the police station and reported that Appellant had assaulted
her.  Farmer observed a small, red bump, roughly the size of a silver dollar, on
Thomas’s head.

Appellant
testified that he had woken up in the middle of the night and heard a cell
phone ringing from the living room.  He said that he went to the living room
and picked up the phone.  He stated that Thomas walked up and told him that it
was her phone.  He testified that he scrolled through it for a couple of minutes
and then gave it back to her.  According to Appellant, he and Thomas then sat
down and talked for about twenty or twenty-five minutes and decided that they
should break up.  He stated that she left and then returned about forty-five
minutes later.  Appellant testified that Thomas told him that she had nowhere
else to stay that night and asked if she could stay until he had to leave for
work in the morning.  He said that he had agreed and that she had stayed until
he woke up at about 6:00 a.m.

Appellant
testified that he wanted to break up with Thomas because he was worried about
her medical condition.  He “thought her seeing [him] was stressing her out in a
way where she was getting up in the middle of the night, writing down crazy
things.”

On
cross-examination, the State asked Appellant for impeachment purposes about his
previous out-of-state conviction for domestic battery.  Appellant’s attorney
objected, and the trial court overruled the objection.

II. 
Sufficiency of the Evidence

In his first two issues, Appellant contends that the
evidence is legally and factually insufficient to support his conviction.  But
since this case was submitted, the Texas Court of Criminal Appeals has held
that there is no meaningful distinction between the legal sufficiency standard
and the factual sufficiency standard.[2]  Thus, the Jackson
standard, which is explained below, is the “only standard that a reviewing
court should apply in determining whether the evidence is sufficient to support
each element of a criminal offense that the State is required to prove beyond a
reasonable doubt.”[3]

The sufficiency of the evidence in a criminal case is not
determined by a no-evidence standard.[4] 
Instead, in our due-process review of the sufficiency of the evidence to
support a conviction, we view all of the evidence in the light most favorable
to the prosecution to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt.[5]  The
jury is the sole judge of the credibility of the evidence and the weight to be
given to each piece of evidence.[6]

Appellant admitted that he and Thomas had met at a bar on
New Year’s Eve and that she had begun staying with him in his apartment that
night.  She would spend five out of seven nights a week with him.  He testified
that he had suggested that she live with him full time after they had dated
about a month and a half.  He thought that she had agreed and was living with
him.  He testified that he was not sure what she did for a living but that she
had mentioned modeling.  Appellant became concerned when he saw several
medicine bottles in Thomas’s purse.  He had never seen that many.  The drugs
included Klonopin, Vicodin, Adderall, and several others with “weird names”
that he had never seen or heard of.

Both
Appellant and Thomas agreed that they had lived together for about three
months.  After about a month, she began leaving the apartment in the early
morning hours and then returning after several hours.  Appellant testified that
he decided to end the relationship and had told her of his decision on the same
day that she alleged was the day that he had assaulted her.

Appellant
testified that Thomas’s ringing telephone woke him up, and he picked it up and
scrolled through it.  He said that they mutually agreed to end the relationship,
and Thomas left.  About forty-five minutes later, she came back and said that she
had no place to go.  He let her back in, and she stayed until he had to get up
for work.  About two weeks later, the police came to his door.

Appellant
denied that any assault occurred and denied that Thomas had ever told him that she
was accusing him of assault.

Thomas,
on the other hand, described the relationship as rocky and filled with
emotional, but not physical, abuse.  Thomas testified that she had gotten up to
write down her thoughts the same night that Appellant claimed her ringing phone
had awakened him.  She described Appellant as irate and stern because he
thought she had been cheating on him.  He took her phone, and when she politely
asked him to please return the phone, he hit her, although she was not sure
whether he used his hand or the phone to hit her.  Then he slammed her down and
tackled her, and she screamed, left, and pounded on a neighbor’s door.  When
she realized that she did not have her keys or her telephone, she went back to
Appellant’s apartment, got her keys and phone, and spent the rest of the night
in her car.  She did not call the police at that time.

The
jury heard the testimony of Appellant and Thomas.  The jury also saw the
photographs of Thomas and heard testimony from the police.  The case was
essentially a swearing match, but there was evidence of a small red mark on Thomas’s
head, and the police testified that she was upset and had disheveled hair when
she reported the assault.  Applying the appropriate standard of review, we
cannot say, under the law, that the evidence was insufficient to support the
jury’s verdict.  We therefore overrule Appellant’s first two issues.

III. 
Admissibility of Prior Conviction

In
his third issue, Appellant argues that the trial court reversibly erred by
admitting evidence of a prior family violence conviction.  The State concedes
error under rule 609[7] but argues that it is
harmless.  We agree.

At
trial, Appellant testified that he had satisfactorily completed the period of
probation for domestic violence assessed upon his guilty plea in the prior case. 
He testified that, because he had successfully completed the period of
probation, he was discharged from probation and the offense was expunged from
his record.

Rule
609 permits admission of evidence of conviction of certain offenses for
purposes of impeachment of a witness.[8]  But, among the limits on
the admissibility of prior convictions, subsection (c)(2) provides that 

[e]vidence of a conviction
is not admissible under this rule if . . . probation has been
satisfactorily completed for the crime for which the person was convicted, and
that person has not been convicted of a subsequent crime which was classified
as a felony or involved moral turpitude, regardless of punishment.[9]

As
the State candidly concedes, the trial court erred under rule 609(c)(2) by
admitting evidence of Appellant’s prior domestic violence conviction.  Generally,
the erroneous admission or exclusion of evidence is nonconstitutional error
governed by rule 44.2(b) if the trial court’s ruling merely offends the rules
of evidence.[10]  Under rule 44.2(b), we
are to disregard the error if it did not affect Appellant’s substantial rights.[11]
 A substantial right is affected when the error had a substantial and injurious
effect or influence in determining the jury’s verdict.[12]
 Conversely, an error does not affect a substantial right if we have “fair
assurance that the error did not influence the jury, or had but a slight
effect.”[13]  In making this
determination, we review the record as a whole, including any testimony or
physical evidence admitted for the jury’s consideration, the nature of the
evidence supporting the verdict, and the character of the alleged error and how
it might be considered in connection with other evidence in the case.[14]
 We may also consider the jury instructions, the State’s theory and any
defensive theories, whether the State emphasized the error, closing arguments,
and even voir dire, if applicable.[15]

The
record contains sufficient evidence of guilt of the offense in this case, the
jury charge contains a proper limiting instruction regarding the jury’s
consideration of extraneous offenses, the State spent very little time on the
improper evidence and did not delve into its details, and finally, the trial
court probated Appellant’s sentence.  We therefore cannot say that the trial
court’s error contributed either to Appellant’s conviction or to a higher
punishment.  We hold that the trial court’s error was harmless beyond a
reasonable doubt and overrule Appellant’s third issue.

IV. 
Conclusion

Having
overruled Appellant’s three issues, we affirm the trial court’s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; DAUPHINOT and MCCOY, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 11, 2011









[1]See Tex. R. App. P.
47.4.





[2]Brooks v. State,
323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling Clewis v. State,
922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)).





[3]Id.





[4]Butler v. State, 769
S.W.2d 234, 239 (Tex. Crim. App. 1989), overruled
on other grounds by Geesa v. State, 820 S.W.2d 154, 161 (Tex. Crim.
App. 1991), overruled on
other grounds by Paulson v. State, 28 S.W.3d 570, 571 (Tex. Crim. App.
2000).





[5]Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).





[6]Brooks, 323 S.W.3d at
899.





[7]See Tex. R. Evid.
609(a), (c)(2).





[8]Id.





[9] Tex. R. Evid. 609(c)(2).





[10]See Solomon v. State,
49 S.W.3d 356, 365 (Tex. Crim. App. 2001).





[11]Tex. R. App. P. 44.2(b); see
Mosley v. State, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh’g),
cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State, 961
S.W.2d 639, 642–43 (Tex. App.—Fort Worth 1998, pet. ref’d).





[12]King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.





[13]Solomon, 49 S.W.3d
at 365; Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).





[14]Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002).





[15]Id. at 355–56.